Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2014, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TRENNA S. PARKER**
Parker & Maguire Law Firm, P.C.
Noblesville, Indiana

ATTORNEY FOR APPELLEE:

**ALICIA A. WANKER**
Campbell Kyle Proffitt LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DALLAS C. MYERS | ) | |
| | ) | |
| Appellant-Defendant | ) | |
| | ) | |
| vs. | ) | No. 29A02-1405-DR-335 |
| | ) | |
| HEATHER D. MYERS | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable David K. Najjar, Special Judge
Cause No. 29D02-0704-DR-457

**December 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

In 2013 Dallas Myers ("Father"), a resident of Texas, filed a series of motions in Hamilton Superior Court seeking, among other things, custody of his daughter J.M. J.M.'s mother, Heather Myers ("Mother"), a resident of Noblesville, opposed Father's motions. After a hearing, the trial court denied Father's request to modify custody. The court also denied Father's request to hold Mother in contempt, as well as his request to require Mother to contribute to transportation expenses related to his parenting time. On appeal, Father argues that the trial court erred by denying these three requests. Because we find no merit in Father's claims, we affirm the trial court.

## Facts and Procedural History

Mother and Father have one child together, J.M., born in June 2003. The parties divorced in 2008, and the divorce decree granted Mother sole legal and physical custody of J.M. Father moved to Texas in 2011. Since that time, he has exercised regular parenting time with J.M. J.M.'s paternal grandmother makes this possible by driving J.M. to and from Texas.

In 2013 Father filed a motion to modify custody. Both parties then filed a flurry of motions pertaining to custody, parenting time, and child support. In his motions, Father sought legal and physical custody of J.M. and a decrease in his child-support obligation. Among other things, he also requested that Mother pay a portion of the cost of transporting J.M. to and from Texas and that she be held in contempt for interfering with his parenting time. *See* Appellant's App. p. 31-33, 40-44. In response, Mother sought to modify Father's parenting time and argued that she should not be required to

2

pay any cost associated with transporting J.M. to and from Texas. *Id.* at 34-39. The trial court held a hearing on the various motions in March 2014.

At the hearing, Father testified that he wanted J.M. to move to Texas and that she had family there; Father lives with his new wife and his mother, and he has siblings who live nearby. Tr. p. 8. Father also testified that his relationship with J.M. was improving and that he had spoken to J.M. about moving to Texas and she was "kind of excited . . . ." *Id.* at 32. Father testified that since he moved to Texas, Mother had been interfering with his parenting time by disagreeing with his proposed parenting-time dates, and he asked the trial court to hold Mother in contempt. *Id.* at 9-11, 43-44. He also asked the trial court to order Mother to pay a portion of the transportation fees associated with his parenting time, but he admitted that his mother voluntarily drove J.M. between Indiana and Texas. *Id.* at 11. Returning to the issue of custody, Father expressed concern that Mother left J.M. alone at home some mornings when she left for work at a local breakfast restaurant, making ten-year-old J.M. responsible for feeding and dressing herself and getting on the school bus. *Id.* at 24. Father told the court that J.M. would have her own room in Texas and he had investigated local elementary schools and extracurricular activities for J.M. in Texas. *Id.* at 26, 34-35. When asked about providing financially for J.M., Father testified that he had started his own company in 2013 doing "remodel construction" and "maintenance," and he earned approximately $150/week. *Id.* at 8, 38-39. He admitted that he had a child-support arrearage of approximately $6000. *Id.* at 44.

Mother testified that she opposed J.M. moving to Texas. Discussing J.M. being alone in the morning, Mother said:

3

> I talked it over with [J.M.] before school started and I said to her, "how would you feel about being at home for a short time in the morning by yourself, catching the bus on your own after I've already left for work?" and she assured me that she was more confident than I felt about it.

*Id.* at 90. Father's counsel objected on hearsay grounds. The trial court overruled the objection and noted that it "was not accepting the testimony for the truth of what the child said but as an explanation of why [Mother] took certain actions." *Id.* at 90-91. Mother went on to tell the court that she had recently arranged a new work schedule that would allow her to be home more in the mornings with J.M., and she was taking courses to begin a new job with a better schedule. *Id.* at 91-92. Mother also testified that J.M. was involved in her local church, Girl Scouts, and music lessons at her school. Because J.M. had lived in Noblesville "for her entire life," Mother did not believe "uproot[ing] her to move to Texas . . . would be a good idea . . . ." *Id.* at 92. She asked the court to hold Father solely responsible for transportation expenses, saying: "I just have an issue with the transportation cost[s] . . . due to it being his decision [to move to Texas] and I have not taken [J.M.] away from [] Father, he decided to move away from her and that is my biggest issue with it." *Id.* at 93.

The trial court took the matter under advisement.[1] In April 2014 the court entered an order denying Father's request to modify custody and addressing the parties' remaining requests. In relevant part, the court concluded:

> 5. The Court [] has significant concerns regarding Father's requests, as he has requested relief from the cost of travel arrangements made necessary by the distance between the parties, however, the Court would note that Father

---

[1] After the hearing, Mother sought to reopen the evidence to present additional information regarding her childcare arrangements and Father's child-support arrearage. *See* Appellant's App. p. 46-49. Father objected and moved to strike the document. *Id.* at 49-51. The trial court entered an order denying Mother's request to reopen the evidence and struck the document from the record. *Id.* at 52.

elected to move to Texas, and the evidence suggests that Father does not incur significant expenses for travel arrangements, as the travel is usually completed only by his mother.

6. The Court also has concerns that the child lacks significant contacts with the State of Texas, and that she does have significant contacts with the State of Indiana.

7. The Court does not find that there is a substantial change in circumstances which would necessitate a change in custody or parenting time. The Court further does not find that a modification of custody or parenting time would be in the best interests of the child. While the Court has concerns with Mother's lack of child care in the mornings [while] she is away at work, the Court cannot conclude that Mother is unfit, or that this situation creates a harmful situation for the child.

\*  \*  \*  \*  \*

9. With regard to transportation, the Court finds that Father shall bear all the costs of transporting the child at the beginning and conclusion of his parenting time until such time as Father is current in his child support obligation. The Court notes that Father is substantially in arrears in his child support obligation to Mother. Although the Court did not have sufficient information to determine Father's current arrearage, it was determined to be $6,163.00 as of January 12, 2011 and Father was ordered at that time to pay such arrearage down at $20.00 per week.

10. Upon Father eliminating his arrearage, the parties shall share equally in the costs of transporting [J.M.] to and from Father's parenting time.

\*  \*  \*  \*  \*

12. The Court does not find Mother in contempt of court with regard to parenting time issues. However, the Court does find that Father has missed some parenting time due to rescheduling and shall be entitled to make-up time for the time he has missed. . . .

13. Father has been ordered to pay child support in the amount of $44.00 per week. Father seeks relief from this amount due in part to his current income level, which he reports is approximately $150.00 per week. The Court notes that this amount is less than the federal minimum wage, and therefore finds that Father is voluntarily underemployed.

14. If the Court imputes income to Father of $300.00 per week, the Court notes that the child support calculation is approximately $44.00 per week.

5

[] The Court therefore finds that a modification of child support is not warranted.

Appellant's App. p. 25-27.

Father now appeals.

**Discussion and Decision**

On appeal, Father argues that the trial court erred by: (1) denying his request to modify custody; (2) failing to find Mother in contempt; and (3) ordering him to satisfy his child-support arrearage before requiring Mother to contribute to transportation expenses.

**I. Custody Modification**

Father argues that the trial court erred by denying his request to modify custody of J.M. *See* Appellant's Br. p. 7-13.

According to Indiana law, a trial court may not modify a child-custody order unless "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter." Ind. Code § 31-17-2-21(a); *see Wilson v. Myers*, 997 N.E.2d 338, 340 (Ind. 2013). "In making its determination, the court shall consider the factors listed under section 8 of this chapter." Ind. Code § 31-17-2-21(b). "Those factors include: the child's age and sex; the wishes of the parent(s); the child's wishes; the relationship the child has with his or her parent(s), sibling(s), and others; the child's adjustment to home, school, and community; the mental and physical health of all involved; any evidence of domestic or family violence; and any evidence that the child has been cared for by a de facto custodian." *Wilson*, 997 N.E.2d at 340

6

(citing Ind. Code § 31-17-2-8(1)-(8)). "There is no presumption favoring either parent . . . and the party seeking the modification bears the burden of demonstrating that the existing arrangement is no longer in the best interests of the child and there has been a substantial change in one or more of the enumerated statutory factors[.]" *Id.* (citing I.C. § 31-17-2-8 & *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). We review custody determinations for an abuse of discretion, and we grant our trial courts latitude and deference in these matters. *Id.* (citations omitted).

Father's claim of error with respect to custody is three-fold[2]: (1) the trial court applied the wrong legal standard because the court did not need to find that Mother was unfit in order to enter a modification of custody; (2) the trial court relied on impermissible hearsay evidence to determine that leaving J.M. home alone did not create a harmful situation; and (3) the evidence shows a substantial change in circumstances warranting modification. *See* Appellant's Br. p. 9, 11-13. We disagree.

First, there is no evidence that the trial court believed it had to find Mother unfit before modifying custody. In fact, the trial court cited the correct legal standard in determining that a custody modification was not warranted. *See* Appellant's App. p. 26 ("The Court does not find that there is a *substantial change in circumstances* which would necessitate a change in custody or parenting time." (emphasis added)). The court's statement regarding Mother's fitness appears, instead, to be an assessment of the

---

[2] Father implies that the trial court's denial of his request to modify custody was based in part on the document Mother submitted with her request to reopen evidence. *See* Appellant's Br. p. 10; *supra* n.1. We reject this argument: the trial court denied Mother's request to reopen the evidence and struck the questioned document—which pertained to childcare and Father's child-support arrearage—from the record. We are confident the trial court disregarded this stricken document when reaching its conclusions in this case.

evidence it heard regarding Mother's choice to leave J.M. home alone for certain periods of time, and we find no error in that respect.

Nor are we convinced that the trial court relied on impermissible hearsay evidence. At the hearing, Mother testified about a statement J.M. made to her about staying home alone when Mother left for work:

> I talked it over with [J.M.] before school started and I said to her, "how would you feel about being at home for a short time in the morning by yourself, catching the bus on your own after I've already left for work?" and she assured me that she was more confident than I felt about it.

Tr. p. 90. Father's counsel objected on hearsay grounds. The trial court overruled the objection and noted that it "was not accepting the testimony for the truth of what the child said but as an explanation of why [Mother] took certain actions." *Id.* at 90-91. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). A statement is not hearsay if offered for another purpose. *In re A.C.*, 770 N.E.2d 947, 951 (Ind. Ct. App. 2002) (citation omitted). The court's response indicates that it considered this evidence for the limited purpose of determining why Mother decided to leave J.M. home alone some mornings when she left for work. As such, it was not hearsay, and the trial court did not err.

Finally, we cannot agree that the evidence supports a custody modification in Father's favor. At the hearing, Father testified that he wanted J.M. to move to Texas and that she had family there—Father lives with his new wife and his mother, and he has siblings who live nearby. Father also testified that his relationship with J.M. was improving and that he had spoken to J.M. about moving to Texas and she was "kind of

8

excited . . . ." Tr. p. 32. In addition, he told the court that J.M. would have her own room in Texas and could get involved in extracurricular activities there. Mother testified that J.M. was already involved in her local community through church, Girl Scouts, and music lessons. Because J.M. had lived in Noblesville "for her entire life," Mother did not believe "uproot[ing] her to move to Texas . . . would be a good idea . . . ." *Id.* at 92. After hearing this testimony, the trial court determined that a modification was not warranted, finding that J.M. lacked "significant contacts with the State of Texas, and that she does have significant contacts with the State of Indiana." Appellant's App. p. 26. The court also found that, to the extent it was relevant to the issue of modification, Mother's decision to leave J.M. home alone some mornings did not make Mother an unfit parent and did not harm J.M. We cannot say the trial court abused its discretion in reaching these conclusions. Father's argument to the contrary is nothing more than an invitation to reweigh the evidence, which we will not do. The trial court did not err in denying Father's request to modify custody of J.M.

## II. Contempt

Father also argues that the trial court erred by denying his request to hold Mother in contempt for allegedly interfering with Father's parenting time. *See* Appellant's Br. p. 14-16. We use an abuse-of-discretion standard to review a trial court's contempt determination. *See Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005).

At the hearing, Father testified that he had missed some parenting time since moving to Texas, and he blamed Mother for this. He claimed that he sent Mother certified letters requesting certain dates for summer parenting time, but Mother did not

9

agree to the dates Father proposed, and as a result, his parenting time was delayed. After hearing this evidence, the trial court declined to find Mother in contempt, saying: "the Court does find that Father has missed some parenting time due to rescheduling and shall be entitled to make-up time for the time he has missed . . . ." Appellant's App. p. 27. Father appears to argue that because he and Mother could not agree on certain dates for parenting time, Mother should be held in contempt. But the trial court rejected Father's view of the evidence, and when reviewing a court's contempt determination, we will neither reweigh evidence nor judge witness credibility. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind. Ct. App. 2007). We find no error in the trial court's refusal to hold Mother in contempt.

### III. Transportation Expenses

Finally, Father argues that the trial court erred by finding that he should be solely responsible for parenting-time transportation expenses until he satisfies his child-support arrearage.

The commentary to Indiana Parenting Time Guideline I(B)(1) provides that where distance between parents is a factor, "[t]he cost of transportation should be shared based on consideration of various factors, including the distance involved, the financial resources of the parents, the reason why the distances exist, and the family situation of each parent at that time." In denying Father's request for transportation expenses, the trial court noted that Father owed at least $6000 in unpaid child support in 2011. Appellant's App. p. 26. The court also found that "the evidence suggests that Father does not incur significant expenses for travel arrangements, as the travel is usually completed

10

only by his mother." *Id.* at 25. Father does not challenge these findings; instead, he argues that there was no evidence regarding whether his arrearage had increased or decreased since 2011. Appellant's Br. p. 18. He continues: "[t]he evidence presented at the hearing showed that the arrearage[] accrued prior to his relocation . . . [and] there was no finding that Mother could not afford to contribute to transportation costs or that it would present an undue hardship on her family . . . ." *Id.* We do not find Father's arguments persuasive.

The trial court's unchallenged findings show that Father owes Mother a considerable amount of child support. The fact that Mother has been denied child support with which to provide for J.M. is relevant to "the financial resources of the parents" as referenced in the transportation-related commentary to the Parenting Time Guidelines. In addition, the trial court found that because Father's mother voluntarily transports J.M. to and from Texas, Father does not incur significant transportation expenses. In light of these findings, we cannot say that the trial court erred by finding that Father should be solely responsible for parenting-time transportation expenses until he satisfies his child-support arrearage.

Affirmed.

BAKER, J., and RILEY, J., concur.

11