Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
LeBlanc & Mulholland, LLC
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**ROSEANN P. IVANOVICH**
Law Office of Roseann P. Ivanovich
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF )
THE PATERNITY OF K.B.: )
)
B.C., )
)
Appellant-Petitioner, )
)
vs. )     No.  45A04-1404-JP-199
)
K.B., )
)
Appellee-Respondent. )

**FILED**
Dec 10 2014, 10:04 am

**CLERK**
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas L. Ryan, Judge Pro Tempore
Cause No. 45D06-1308-JP-1366

**December 10, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the trial court held a custody hearing at which B.C. (Mother) testified and K.B. (Father) presented no evidence, though his attorney presented argument. Following that hearing, the trial court modified the previous child custody order and awarded full legal and physical custody to Father. Mother is appealing the modification order. We vacate the trial court's order and remand for a full evidentiary hearing.

FACTS

Mother and Father are the parents of K.B., who was born on March 18, 2006. On August 9, 2013, the State of Indiana filed a petition to establish paternity. On September 23, 2013, paternity was established in Father. Mother filed a motion for custody of K.B. and child support in the paternity proceeding. Tr. p. 4. The issue of custody, about which Mother and Father disagreed, was transferred to another magistrate.

On February 13, 2013, an initial hearing on custody was held, and a judge pro tempore entered a temporary order of custody, pursuant to which the parents shared joint legal and physical custody. Mother and Father were to transfer K.B. back and forth on a weekly basis. Mother lives in Gary and Father lives in Portage. K.B. was enrolled in school in Portage, and Mother struggled to pay for the gas to transport K.B. to and from school when he was with her. Mother believed that the Portage school was better than the schools in Gary, however, so she did not ask that K.B. transfer to a Gary school.

On March 28, 2014, a different judge pro tempore held a custody hearing at which Mother appeared pro se and Father was represented by counsel. At the hearing, Mother testified—though she was not under oath—and Father's attorney made representations

2

about what Father's witnesses would testify to. Father did not testify, and presented no evidence. At the close of the evidence, the trial court granted sole legal and physical custody to Father. The trial court further ordered that Mother would have parenting time pursuant to the Indiana Parenting Time Guidelines. The trial court did not issue findings of fact or conclusions of law in its custody order. Mother now appeals.

DISCUSSION AND DECISION

Initially, we observe that the trial court's order regarding custody could either be treated as an initial custody order or as a custody modification order. Either way, we review the trial court's order for an abuse of discretion. See Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (applying abuse of discretion standard to a custody modification order); Pitcavage v. Pitcavage, 11 N.E.3d 547, 553 (Ind. Ct. App. 2014) (applying abuse of discretion standard to an initial custody order).

The rules and standards to be applied by the trial court, however, differ for an initial custody order versus a custody modification order. Based on the record before us, we are unable to determine which set of rules should apply. There are factual matters that must be established to make this determination. See Hughes v. Rogusta, 830 N.E.2d 898, 901 (Ind. Ct. App. 2005) (finding that the custody modification standard did not apply where the father did not acquiesce in the mother's custody but immediately filed to establish paternity and determine custody after the mother moved out); In re Paternity of Winkler, 725 N.E.2d 124, 128 (Ind. Ct. App. 2000) (holding that a custody modification standard applied when the mother had custody of an out-of-wedlock child for twelve

3

years because "the same concerns about stability and continuity present in sole and joint custody modifications are present").

In the hearing at issue, Mother testified that she has always been in K.B.'s life. Tr. p. 13. She also testified that she has been taking care of him through his life and ensuring he went to all doctor's appointments. Id. at 27. Father's attorney represented that Father "has always had the child," but presented no evidence to support that assertion. Id. at 10. This record provides an insufficient basis to determine the circumstances of K.B.'s life before paternity was established and before the temporary custody order was entered. As a result, we cannot determine whether the trial court should have treated this as an initial custody request or a modification of custody request.

Moreover, regardless of the nature of the custody order, there is an incurable dearth of evidence in the record supporting it. Father presented absolutely no evidence at this hearing. It is well established that argument of counsel is not evidence that can be considered by the trial court in making factual determinations. El v. Beard, 795 N.E.2d 462, 467 (Ind. Ct. App. 2003). Father's attorney summarized what he anticipated his witnesses would testify to if called to the stand. The trial court questioned, "Now how are these witnesses going to help me if I hear their testimony?" To which counsel responded, "Well, if at this point, Judge—you're a seasoned judge, so I mean—I think we pretty much told you everything we would expect them to say." Tr. p. 24. None of the witnesses—including Father—actually testified. As a result, Mother was unable to cross-examine them or present her own evidence to rebut their testimony.

4

We infer from the trial court's statements at this hearing that it ruled as it did because it concluded that if Mother had physical custody of K.B., she would remove him from the Portage school and enroll him in a school in Gary. Mother's testimony, however, was precisely opposite of this conclusion:

- "[The Portage school] is the best school. I have [to] agree that that's the best school for him, because I enrolled him there ever since he was in Kindergarten." Tr. p. 21.

- "I feel that [the Portage school]'s the best school for him, not to live in Gary or go to that school." Id.

- ". . . I said [to Father] okay, I agree that he can go in [sic] Portage School, but could you just help me with gas. That's it." Id. at 22.

- ". . . Kyle Elementary in Portage, which is a great school for my child." Id. at 23.

- The Court: "And am I hearing that the same circumstances still exist that if you have sole legal custody, you're going to have to travel from Gary over to Portage?" Mother: "And that's what I do—and that's what I've been doing." Id.

- The Court: "So, you're going to change the school?" Mother: "No, I still agree—because I don't want to be selfish. It's not about me, it's about the child." Id. at 26.

- "[Inaudible] for the wellbeing of my child, which I said was the Portage School, so I'm willing to go there, if I have to every day." Id.

Mother appeared pro se at this hearing and at times had difficulty articulating her arguments, but she was consistent throughout the hearing that she intended to allow K.B. to continue attending school in Portage. And as Father presented no evidence at this hearing, there is nothing in the record to rebut Mother's statements.

5

Our Supreme Court has criticized the summary resolution of a custody modification proceeding without an evidentiary hearing where witnesses were available to be sworn in and cross-examined. Wilson v. Myers, 997 N.E.2d 338, 340-41 (Ind. 2013). The Wilson Court's description of the proceedings below in that case are strikingly similar to the case at issue herein:

> No mention [in the trial court's order] is made of whether this modification is in the best interests of [the children], nor is there any mention of a substantial change in any of the factors enumerated in Indiana Code § 31–17–2–8 [regarding custody orders]. And whether such explicit findings are required or not—and without reducing the importance of the statutory considerations to just talismanic magic words in a trial court order—considering the proceedings leading up to the order, we cannot even infer support for such findings.
>
> None of the witnesses at the [custody] hearing were sworn or cross-examined; none of the documents introduced—if there were any—were admitted through any foundation or examination of reliability. No courtroom formalities (and few civilities) seem to have been observed at all. Parties, attorneys, counselors, and the judge talked freely, interrupted, and questioned each other without any semblance of order or procedure. The trial court made reference to looking at "the whole picture" in making its decision, but provided no insight into what was contained in that picture before simply announcing that it planned to grant Myers's motion to modify custody. . . . And nothing in the transcript of the hearing relates to any of the factors enumerated in Section 31–17–2–8, so we cannot safely assume that they were considered.
>
> Myers argues that Wilson effectively waived any right to protest this process by signing the release authorizing the court to directly contact the counselors, not insisting that the witnesses be sworn, and not filing a motion requesting specific findings of fact and law. But we must be mindful that even if Wilson—and Myers—waived their right to confrontation and formal cross-examination of witnesses, and consented to an unorthodox and summary procedure, the interests of the two critical individuals in the case—A.W. and B.W.—were not separately represented at the hearing. So even if

6

the transcript did not clearly reflect Wilson requesting an evidentiary hearing and a second in-camera interview—which he did—we would be loathe to use that "waiver" as a cure-all to remediate a process defective in protecting the two individuals most at-risk in this venture.

> In short, what we are now faced with on appeal is an order directing one parent to hand over two children to another parent with no mention or hint that doing so is in accordance with the Indiana Code. And the only support for this order is the transcript of what seems to be little more than an unorganized shouting match labeled as an "evidentiary hearing." To issue such an order was therefore an abuse of discretion.

Id. at 340-42 (emphases added, internal citations and footnotes omitted); see also Krampen v. Krampen, 997 N.E.2d 73, 83 n.5 (Ind. Ct. App. 2013) (noting that "[w]hile we understand the desire of the attorneys and the trial court for expediency and efficiency, these concerns must yield to the proper presentation and admission, not oral summation, of all evidence needed to arrive at the correct conclusion").

In this case, as in Wilson, no witnesses were sworn or cross-examined, no documents were introduced, and no courtroom formalities were observed. The trial court frequently interrupted Mother when she was speaking and treated her without respect or courtesy throughout the proceeding.[1] See, e.g., tr. p. 7 (trial court, to Mother, "well I'm going to wind you up and see what you have to say, how's that?"); id. at 30 ("You're not listening to me at all. I'm wasting my breath. We're done."). The trial court made no mention of the Indiana Code or the statutory factors that must be considered in making a

---

[1] We caution the trial court to be respectful to all litigants, witnesses, and attorneys appearing before it in the future.

custody order, whether it be an initial order or a modification order. The custody order itself likewise offers no enlightenment.

We echo our Supreme Court's advice in Wilson:

> while summary proceedings—when properly agreed to—can be beneficial in deciding matters of custody and parenting time to minimize the negative impact on the children, such summary proceedings may be less appropriate where the parties are vigorously contesting every facet of the process and appear incapable of approaching these decisions in a civil or cooperative manner. In such cases, we encourage trial courts to utilize the formal procedures embodied in the Indiana Trial Rules to maintain a level of control and decorum that keeps the litigation process from turning into a mud-slinging argument and preserves the rights of all involved.

997 N.E.2d at 342. Given the lack of evidence presented and the overall tone of the hearing, we vacate the trial court's custody order and remand for a full expedited evidentiary hearing.

Without condoning the custody order, we acknowledge that K.B. has been living with Father on a full-time basis since the order was issued. To minimize further disruption to K.B.'s life, we order this status quo to continue until further order of the trial court. See id. (holding that "the current living arrangement was not properly established, but at this point it is what it is and it is our obligation, in the best interests of the children, not to exacerbate the problem or to encourage the practice followed here").

The judgment of the trial court is vacated and remanded for an expedited evidentiary hearing.

MAY, J., and BARNES, J., concur.