ATTORNEY FOR APPELLANT
Robert J. Palmer
Mishawaka, Indiana

ATTORNEY FOR APPELLEE
Frederick B. Ettl
South Bend, Indiana

# In the
# Indiana Supreme Court



No. 71S03-1305-DR-399

JASON WILSON,

*Appellant (Respondent below),*

v.

KELLY (WILSON) MYERS,

*Appellee (Petitioner below).*

Appeal from the St. Joseph Superior Court, No. 71D05-0411-DR-640
The Honorable Margot F. Reagan, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-1204-DR-153

**November 5, 2013**

**David, Justice.**

When parents fight each other, it is often the children who suffer. When parents litigate against each other, however, the laws and legal system have explicit mechanisms and considerations aimed specifically at protecting the children caught in the middle.

Here, those mechanisms and considerations were ignored and a father was summarily ordered to give up custody of the two children who had been living in his care for over five years. Under the facts and circumstances of this case, we find that this summary resolution, without an evidentiary hearing where witnesses would be sworn and testimony heard, and

without the consent of the parties and their counsel, was an abuse of the trial court's discretion, and we therefore remand for the proper proceedings.

## Facts and Procedural History

Jason Wilson and Kelly Myers divorced in 2006 and physical custody of their two children, A.W. and B.W., was awarded to Wilson. In February 2011, Myers filed a motion to modify actual physical custody with respect to A.W., requesting that A.W. be allowed to reside with her. She later amended her motion to seek physical custody of both children. The matter was referred to the Domestic Relations Counseling Bureau. The DRCB recommended that the parties and children participate in family counseling.

Myers subsequently filed a series of motions with the trial court, alleging that Wilson was attempting to sabotage the counseling process. In response, the trial court requested permission to communicate with the counselor directly; both Wilson and Myers agreed to this. The director of the counseling service then wrote a letter to the court, expressing outrage after discovering that Wilson had been secretly recording the counseling sessions. The trial court ordered Wilson to turn over the tapes, which he did, and set Myers's motion to modify custody for a hearing on March 19, 2012.

Present at the hearing were Wilson, Myers, their attorneys, and the family counselors. At the beginning of the hearing, the trial judge announced her intent to rule on Myers's motion to

2

modify custody. Wilson requested an evidentiary hearing on custody, and also an additional in-camera interview of the children.[1]

The hearing then shifted to the topic of Wilson's recording of counseling sessions. The parties and counselors debated which parents were present at which sessions, and why Wilson had problems paying for his sessions. Wilson argued that his problems with counseling were not a sufficient basis to modify custody, and reiterated his request for another in-camera interview.

Instead, the trial court abruptly concluded the hearing, saying "I feel like we've wasted a year. And it shouldn't go on any longer. I don't want to have another in-camera. And I don't understand why we would need an evidentiary hearing. Because I want to grant the Amended Motion to Modify Custody to give both the children to Ms. Myers." (Tr. at 105.) The court then requested Myers prepare and file an order consistent with that decision. No witnesses were sworn during the hearing or evidence received.

Myers filed her proposed order the next day. That same day, Wilson notified the trial court that he did not believe the order was sufficient, but the order was entered as filed. Myers was awarded custody of both A.W. and B.W., effective the next weekend, with Wilson receiving parenting time as had previously been awarded to Myers.

Wilson appealed, arguing that the trial court abused its discretion in modifying the prior custody order without an evidentiary hearing and without issuing findings regarding the best

---

[1] Initial in-camera interviews were conducted by DRCB and reviewed by the trial court nearly a year earlier—prior to the counseling sessions.

interest of the children. (Appellant's Br. at 1.) He also sought appellate attorney fees and expenses. (Appellant's Br. at 1.)

The Court of Appeals affirmed in an unpublished memorandum decision. <u>Wilson v. Myers</u>, 979 N.E.2d 1072 (Ind. Ct. App. 2012) (table). We granted transfer, thereby vacating the Court of Appeals opinion, <u>see</u> Ind. Appellate Rule 58(A), and now remand.

## The Trial Court Abused Its Discretion in Modifying the Custody Order

The Indiana Code prohibits a court from modifying a child custody order unless "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter." Ind. Code § 31-17-2-21(a) (2008). "In making its determination, the court shall consider the factors listed under section 8 of this chapter." Ind. Code § 31-17-2-21(b). Those factors include: the child's age and sex; the wishes of the parent(s); the child's wishes; the relationship the child has with his or her parent(s), sibling(s), and others; the child's adjustment to home, school, and community; the mental and physical health of all involved; any evidence of domestic or family violence; and any evidence that the child has been cared for by a de facto custodian. Ind. Code § 31-17-2-8(1)–(8) (2008). There is no presumption favoring either parent, Ind. Code § 31-17-2-8, and the party seeking the modification bears the burden of demonstrating that the existing arrangement is no longer in the best interests of the child and there has been a substantial change in one or more of the enumerated statutory factors, <u>Kirk v. Kirk</u>, 770 N.E.2d 304, 307 (Ind. 2002).

"We review custody modifications for abuse of discretion with a 'preference for granting latitude and deference to our trial judges in family law matters.'" K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009) (quoting Kirk, 770 N.E.2d at 307).[2]  And for a combination of reasons, we find such an abuse of discretion present in the way this modification was carried out and ordered.

The trial court's order modifying a six-year-old custody agreement read as follows:

> Come now the parties in person and by counsel and hearing is had on Wife's Motions to Modify Custody.  The Court elicits information regarding counseling at Lincoln Therapeutic Partnership from Karen Davis, the parties' counselor, and from Jeanine Curtis, Executive Director, and the Court elicits testimony from the Respondent-Husband, Jason Wilson.
>
> The Court, being duly advised in the premises, grants the Wife's Motions to Modify Custody and awards custody of the two minor children, namely:  [B.W.] and [A.W.], to the Petitioner-Wife, Kelly Myers.  Such custody modification exchange shall be effective Saturday, March 24, 2012.  The Respondent-Husband, Jason Wilson, shall enjoy the same parenting time previously exercised by the Petitioner-Wife and as indicated by the Indiana Parenting Time Guidelines to include alternate weekend visitation and one weeknight each week.
>
> The parties are ordered to exchange income information and to tender a proposed child support worksheet to the Court.

---

[2] Wilson appears to argue that the absence of specific findings related to the best interest of the children and a substantial change in statutory factors related to child custody makes the order an abuse of discretion per se.  (Appellant's Br. at 24–25.)  We do not need to resolve today whether such explicit findings are required pursuant to Trial Rule 52(A) in child custody modification cases; here we find the collective process deficient regardless.

> The Petitioner-Wife, Kelly Myers, agrees to maintain the children at their present schools until the end of the current semester; albeit, that will require the children to travel from the home of the Petitioner-Wife in Niles, Michigan to their respective schools in Mishawaka, Indiana until the end of the term. At the end of the Mishawaka school semester, the children can be enrolled at schools in the Niles, Michigan community where their Mother, the Petitioner-Wife, resides.

(Appellant's App. at 17–18.)[3] No mention is made of whether this modification is in the best interests of B.W. and A.W., nor is there any mention of a substantial change in any of the factors enumerated in Indiana Code § 31-17-2-8. And whether such explicit findings are required or not—and without reducing the importance of the statutory considerations to just talismanic magic words in a trial court order—considering the proceedings leading up to the order, we cannot even infer support for such findings.

None of the witnesses at the March 19 hearing were sworn or cross-examined; none of the documents introduced—if there were any—were admitted through any foundation or examination of reliability. No courtroom formalities (and few civilities) seem to have been observed at all. Parties, attorneys, counselors, and the judge talked freely, interrupted, and questioned each other without any semblance of order or procedure.[4] The trial court made

---

[3] The parties continued to fight even with this order, debating the scope and duration of the academic "semester" and "term" identified in the order.

[4] Myers says that "[t]he parties and all salient witnesses were present and available for examination and cross-examination; and, both direct and cross-examination ensued." (Appellee's Br. at 8.) She also claims that the hearing included a "thoroughgoing discussion of the evidence compiled over the course of the past year, and more particularly, a thoroughgoing discussion of the information or evidence adduced from Lincoln Therapeutic Partnership." (Appellee's Br. at 7.) To say this accurately describes the nature and process of the March 19 hearing is a stretch; and to the extent an in-depth discussion of the issues related to the counseling process occurred, those issues—Wilson's ability to pay counseling fees,

6

reference to looking at "the whole picture" in making its decision, (Tr. at 105), but provided no insight into what was contained in that picture before simply announcing that it planned to grant Myers's motion to modify custody. We know that the trial court contacted the family counselors directly, but none of what was learned during those conversations is reflected in the record. And nothing in the transcript of the hearing relates to any of the factors enumerated in Section 31-17-2-8, so we cannot safely assume that they were considered.

Myers argues that Wilson effectively waived any right to protest this process by signing the release authorizing the court to directly contact the counselors, not insisting that the witnesses be sworn, and not filing a motion requesting specific findings of fact and law. (Appellee's Br. at 8–10.) But we must be mindful that even if Wilson—and Myers—waived their right to confrontation and formal cross-examination of witnesses, and consented to an unorthodox and summary procedure, the interests of the two critical individuals in the case— A.W. and B.W.—were not separately represented at the hearing.[5] So even if the transcript did not clearly reflect Wilson requesting an evidentiary hearing and a second in-camera interview— which he did—we would be loathe to use that "waiver" as a cure-all to remediate a process defective in protecting the two individuals most at-risk in this venture.

In short, what we are now faced with on appeal is an order directing one parent to hand over two children to another parent with no mention or hint that doing so is in accordance with the Indiana Code. And the only support for this order is the transcript of what seems to be little

---

attendance at sessions, and tape-recording of sessions—seem irrelevant to the factors enumerated in Ind. Code § 31-17-2-8.

[5] The children were not present at the March 19 hearing, nor was a Guardian Ad Litem present to represent their interests—despite one apparently having been appointed after Myers filed her motion to modify custody.

more than an unorganized shouting match labeled as an "evidentiary hearing." To issue such an order was therefore an abuse of discretion.

Tempers clearly ran hot for all involved in this case, as can easily happen in family law cases with disputed custody concerns.[6] And while summary proceedings—when properly agreed to—can be beneficial in deciding matters of custody and parenting time to minimize the negative impact on the children, such summary proceedings may be less appropriate where the parties are vigorously contesting every facet of the process and appear incapable of approaching these decisions in a civil or cooperative manner. In such cases, we encourage trial courts to utilize the formal procedures embodied in the Indiana Trial Rules to maintain a level of control and decorum that keeps the litigation process from turning into a mud-slinging argument and preserves the rights of all involved.

## Conclusion

We remand this case for a proper evidentiary hearing and inquiry into in-camera interviews to address Myers's motion for modification of custody. At the same time, however, we are aware that A.W. and B.W. have already been pulled from the school and community they were in when living with Wilson, and are now in school in Michigan and living with Myers. Without condoning this change, or expressing any indication that we believe Myers's motion

---

[6] At a later hearing, the trial judge acknowledged that one of the problems with this case was that it had been long-running and a "mess," there had been violations of her prior orders, and "perhaps I was angry" when she concluded the March 19 hearing. (Tr. at 127.) And tempers continued to run hot at that later hearing, with one attorney referring to the other's statement as "an outrageous lie," the other wanting to know "why is it a lie when my client says something," and the trial court ordering them to "Stop it, both of you." (Tr. at 120.) A new judge has since been appointed to hear this case. (Appellant's App. at 15.)

should (or should not) ultimately be granted, we order this status quo to continue in order to minimize further disruption to A.W. and B.W., until further order of the trial court.[7]

Therefore, while we vacate the trial court's order, we cannot easily "reverse" what the order has already done. Simply put, the current living arrangement was not properly established, but at this point it is what it is and it is our obligation, in the best interests of the children, not to exacerbate the problem or to encourage the practice followed here.

Dickson, C.J., Rucker, Massa, and Rush, J.J., concur.

---

[7] We also note that on remand it remains Myers's burden to show that the original custody order should be modified—Wilson does not have to win his children back from Myers as a result of the trial court's abuse of discretion here.