## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 14 2015, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Deborah M. Agard
Law Office of Deborah M. Agard
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Douglas R. Long
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of:<br><br>Leann Palmer (Lawrence),<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Jeffrey Palmer,<br><br>*Appellee-Respondent* | May 14, 2015<br><br>Court of Appeals Case No.<br>48A04-1405-DR-203<br><br>Appeal from the Madison Circuit Court.<br>The Honorable Carl E. Van Dorn, Special Judge.<br>Cause No. 48D03-0712-DR-1413 |

**Baker, Judge.**

[1] Leann Palmer (Mother) appeals the trial court's order denying her petition to modify the child custody arrangement in place between Mother and Jeffrey Palmer (Father). Mother makes a number of arguments, which we consolidate and restate as follows: (1) that the trial court erred by declining to name Betty Palmer, the children's paternal grandmother (Grandmother), as a de facto custodian and party; and (2) that there is insufficient evidence supporting the trial court's order. Finding no error, we affirm.

## Facts

[2] Mother and Father were married in 1988 and had two children, A.P., who was born in 2001, and B.P., who was born in 2003. On April 18, 2007, the marriage was dissolved and Father was named primary custodian of the children. At that time, Mother was incarcerated on convictions for five counts of federal bank fraud.[1]

[3] Since that time, Father and the children have lived with Grandmother. The children are enrolled in a parochial school, which they have attended for the past three years. Mother does not contribute to the cost of their education or healthcare, and she has never paid child support, though Father receives part of her disability payments to care for the children.

---

[1] As a result of her convictions, Mother is ordered to pay over $429,000 in restitution. Monthly payments on this debt are deducted from her disability payments.

A.P. has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). The school he attends has set up a program to help manage his special needs. He has had the same teacher for the past two years, and she testified that A.P. has adjusted quite well to school, concentrates much better since beginning a medication regimen, and now has many friends. Mother has never been involved in the children's education. A.P. sees a psychiatrist, Dr. Sheila Irick, to help manage his medication and his needs. Dr. Irick testified that removing A.P. from his school would be harmful, that A.P. is receiving exceptional care from Father and Grandmother, and that the weight of both children is within normal limits.[2] While there was a time when the children were not involved in any extracurricular activities because of concerns for A.P., both children are now involved in Boy Scouts and basketball.

Father has a full-time job that requires his presence at work from approximately 9 in the morning until 7 or 7:30 in the evening. As a result, he is generally able to spend time with the children in the morning before school and in the evenings before bed, as well as on the weekends. While Father is at work, Grandmother cares for the children. Specifically, she takes A.P. to his doctor appointments, communicates with the school about the children, and ensures that their needs are met. When Father is at home, he cares for the children. When he is able to, he attends medical appointments and always discusses

---

[2] Mother testified that she was concerned that the children were underweight, but offered no expert testimony to contradict Dr. Irick's opinion that the children's weight was healthy.

medical care decisions with Grandmother before those decisions are made. The children are bonded to both Father and Grandmother.

[6] At some point, Mother was released from incarceration. Since that time, she has called the police on Father, resulting in charges against him that were later dismissed, and called Child Protective Services on Father, resulting in allegations that were unsubstantiated. On one occasion, Mother went to the children's school, where she screamed and verbally attacked teachers and school personnel, resulting in her being escorted from the school premises. Mother complains that she has been unable to access the children's school, medical, and mental health records, but that has since been rectified. Father has never been held in contempt for any failure to abide by the custody order in place. Mother testified that if she got custody, she would consider moving the boys to a different school or home schooling them, which Dr. Irick opined would not be in their best interests.

[7] On September 19, 2011, Mother filed a petition to modify the child custody arrangement, seeking to be named the primary custodian. Mother asked that a Guardian ad Litem (GAL) be named to represent the children's interests, and the trial court granted that request, appointing a GAL on March 5, 2012. The GAL filed a report with the trial court on May 21, 2012, and filed a supplemental report on August 7, 2012. The GAL recommended that Mother and Father share joint legal custody but that Father remain the primary physical custodian, with Mother to have liberal parenting time while Father is at work.

[8] On March 5, 2013, Mother filed a second petition to modify the child custody arrangement, seeking to be named the primary custodian. According to Mother, the second petition was filed because no hearing had been held on the first.[3]

[9] On four days between August 28, 2013, and January 27, 2014, the trial court held an evidentiary hearing on the motion to modify. The parties submitted proposed findings of fact and conclusions of law, and on April 8, 2014, the trial court entered its order denying Mother's motion to modify. Mother now appeals.

# Discussion and Decision

## I. De Facto Custodian

[10] Mother first argues that the trial court erred by declining to find that Grandmother is the children's de facto custodian and naming her a party to the litigation. "De facto custodian" is defined as "a person who has been the primary caregiver for, and financial support of, a child who has resided with the person" for at least one year for children over the age of three. Ind. Code § 31-9-2-35.5. If it is established "by clear and convincing evidence that a child has been cared for by a de facto custodian," then certain factors must be considered. Ind. Code § 31-17-2-8.5. If, having considered all relevant factors, the trial

---

[3] The Chronological Case Summary shows that another motion to modify custody, support, and visitation was filed by Mother on June 26, 2013, but this pleading does not appear in the Appellant's Appendix.

court "determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding." I.C. § 31-17-2-8.5(c). In other words, even if a child has been cared for by a de facto custodian, that person is not a required party unless the trial court determines that the child was actually "in the custody" of the de facto custodian.

[11] In this case, Mother never requested that the trial court find Grandmother to be a de facto custodian of the children. Indeed, her proposed findings of fact and conclusions of law make no mention of this issue. Consequently, she has waived it for purposes of this appeal.

[12] Waiver notwithstanding, we note that in any event, Mother failed to meet her burden of establishing by clear and convincing evidence that Grandmother was a de facto custodian. Instead, the record reveals that Grandmother cared for the children while Father was at work, including managing their medical appointments and educational needs. But when Father was home, he was also a caregiver for the children, he kept apprised of what was happening in the children's lives, and he attended medical appointments and school events when he was able to. This is a common situation when any parent has a full-time job, and in this case, the children are lucky enough to have a family member able to meet these needs instead of a childcare facility or babysitter. Therefore, even if

Mother had not waived the issue, we find that she has failed to establish that Grandmother is a de facto custodian.[4]

# II.  Sufficiency

[13] Next, Mother makes a number of arguments that amount to a contention that there is insufficient evidence supporting the trial court's denial of her motion to modify.  We review rulings on requests to modify custody for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters.  *Wilson v. Myers*, 997 N.E.2d 338, 340 (Ind. 2013).  In reviewing the trial court's determination, we neither reweigh evidence nor assess witness credibility.  *In re Marriage of Harpenau*, 17 N.E.3d 342, 346 (Ind. Ct. App. 2014).  We will not substitute our judgment if any evidence or legitimate inferences support the trial court's judgment.  *Id.*

[14] The Indiana Code prohibits a court from modifying a child custody order unless "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter."  I.C. § 31-17-2-21(a).  Those factors include:

---

[4] We also express our skepticism that Mother has standing to raise this issue.  It is apparent to us that the intent of the requirement to make a de facto custodian who has custody of a child a party to any custody proceeding is to benefit and protect the de facto custodian, who otherwise might have no input into the trial court's determination.  We question whether a biological parent has the right to inject the issue into a custody proceeding.  We need not answer this question, however, inasmuch as we conclude that in this case, Mother has not succeeded with her argument on this issue.

- the child's age and gender;
- the wishes of the parent(s);
- the wishes of the child, with greater consideration given to the wishes of children fourteen years of age and older;
- the relationship the child has with his or her parent(s), sibling(s), and others;
- the child's adjustment to home, school, and community;
- the mental and physical health of all involved;
- any evidence of domestic or family violence;
- and any evidence that the child has been cared for by a de facto custodian.

I.C. § 31-17-2-8. The party seeking modification "bears the burden of demonstrating that the existing arrangement is no longer in the best interests of the child and there has been a substantial change in one or more of the enumerated statutory factors[.]" *Wilson*, 997 N.E.2d at 340 (internal citation omitted).[5]

[15]     In this case, the record reveals that Father has been the children's primary custodian since 2006. While the normal ups and downs of life have occurred in the ensuing years, it is apparent that the children are safe, loved, and thriving in this home. Father and Grandmother appropriately sought medical advice

---

[5] Mother makes much of the fact that the trial court quoted caselaw that may or may not still be good authority, claiming that the trial court applied an incorrect legal standard to the proceedings. Specifically, in its order, the trial court stated as follows: "The requirements for a modification of child custody are set forth in I.C. 31-17-2-21 and case authority. There must be a showing that modification is in the best interest of the boys and that there has been a substantial change of circumstances in [Father's] home that warrants a modification." Appellant's App. p. 17. The trial court then proceeds to reference outdated caselaw. While we acknowledge that an incorrect standard may have been applied, we are confident that the evidence in the record readily supports the trial court's judgment. To remand for reconsideration would be an inefficient use of judicial and litigant resources, inasmuch as the trial court would justifiably reach the same conclusion as it did the first time around. Consequently, we decline to remand on this basis.

regarding A.P.'s challenges, received the ADHD diagnosis, and then worked with the school to ensure that his educational needs are being met and with a psychiatrist to ensure that his medication regimen is appropriate. Since receiving the diagnosis and treatment, A.P. has dramatically improved in school and has made many friends at school and in his neighborhood. His psychiatrist testified that A.P. is receiving exceptional care from Father and Grandmother and that it would not be in his best interests to change homes or schools. There is no evidence that B.P. is having any difficulties at this time. Both children are now enrolled in basketball and Boy Scouts.

[16] The vast majority of Mother's argument on appeal consists of her directing our attention to evidence that supports her position and attempting to discredit the evidence and witnesses relied upon by the trial court. This amounts to a repeated request that we reweigh the evidence and assess witness credibility, which we will not do. *See Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (cautioning that with respect to custody modifications, appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence").

[17] It is readily apparent that the difficulties in this case stem from the negative relationship between Mother, Father, and Grandmother. This relationship is permeated by animosity, vitriol, and poor communication. That, unquestionably, is not in the children's best interests. We encourage the adults

in this case to act as such, to leave the past behind, and start anew for the sake of the children. Mother must respect Father's role as parent and primary custodian and Grandmother's role as caregiver, and Father and Grandmother must respect Mother's role as parent, as well as her right to the parenting time to which she is entitled.

[18] That said, there is ample evidence in the record supporting the trial court's denial of the motion for custody modification. There is no basis on which to conclude that the trial court abused its discretion in concluding that Mother failed to meet her burden of establishing a substantial change in circumstances such that modification is warranted.

[19] The judgment of the trial court is affirmed.

Crone, J., concurs, and Brown, J., concurs in part and dissents in part with an opinion.

| | |
|---|---|
| In Re the Marriage of: | Court of Appeals Case No. 48A04-1405-DR-203 |
| Leann Palmer (Lawrence), | |
| *Appellant-Petitioner,* | |
| v. | |
| Jeffrey Palmer, | |
| *Appellee-Respondent.* | |

**Brown, Judge, concurring in part and dissenting in part.**

[20] I concur with the majority as to its de facto custodian analysis, but respectfully dissent from the majority's conclusion that "it is apparent that the trial court applied the correct legal standard" to the proceedings. Slip op. at 8 n.5. In denying Mother's petition, the trial court stated in its "Conclusions of Law" that "[t]he requirements for a modification of child custody are set forth in I.C. 31-17-2-21 *and case authority*." Appellant's Appendix at 17 (emphasis added). It proceeded to cite language from the case of *Herrmann v. Herrmann*, 613 N.E.2d 471, 473 (Ind. Ct. App. 1993), *reh'g denied*, in which this court stated: "A

modification of custody is warranted only when the noncustodial parent shows a decisive change of conditions in the custodial home or a change in the treatment of the children in the custodial home which necessitates removal." *Id.* Thus, despite the fact that it cited to the current modification statute, the court applied this language in *Herrmann* in rendering a decision on Mother's petition.

[21] At the time of *Herrmann*,[6] modification of child custody was governed by Ind. Code § 31-1-11.5-22(d), which provided as follows:

> The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

(Subsequently amended by Pub. L. No. 4-1993, § 264; Pub. L. No. 5-1993, § 277; Pub. L. No. 139-1994, § 2; repealed by Pub. L. No. 1-1997, § 157). In Pub. L. No. 139-1994, the General Assembly replaced the former statute with a new modification statute which is substantially similar to the current version found at Ind. Code § 31-17-2-21(a) and is principally focused on the best interests of the child and whether a substantial change in one of the enumerated factors listed in Ind. Code § 31-17-2-8 has occurred. *See also Joe v. Lebow*, 670 N.E.2d 9,

---

[6] The father in *Herrmann* filed his petition for modification of custody on November 5, 1990. 613 N.E.2d at 473.

17 (Ind. Ct. App. 1996) (noting that "[e]ffective July 1, 1994, the modification provisions in both the paternity and the dissolution statutes were revised significantly . . .").

[22] The court erroneously applied certain language from *Herrmann* that, to prevail, Mother was required to show that "a decisive change of conditions in the custodial home or a change in the treatment of the children in the custodial home" existed "which necessitate[d] removal" of A.P. and B.P. This is a statement of law interpreting a superseded statute which neither concerns itself with the best interests of the children, nor instructs the court to examine the enumerated factors listed in Ind. Code § 31-17-2-8. Rather, when *Herrmann* was issued the court's sole focus was to determine whether the movant demonstrated "changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Because the court applied an incorrect legal standard in reviewing Mother's modification petition, I would remand with instructions that the court consider the best interests of A.P. and B.P., as well as the factors of Ind. Code § 31-17-2-8, without necessarily hearing additional evidence, and to issue amended findings and conclusions based thereon. For these reasons, I respectfully dissent in part.