## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2017, 9:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Margaret M. Christensen
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennifer Sanders,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Bryan Sanders,<br>*Appellee-Respondent.* | May 30, 2017<br><br>Court of Appeals Case No.<br>42A01-1606-DR-1340<br><br>Appeal from the Knox Superior Court<br><br>The Honorable Gara U. Lee, Judge<br><br>The Honorable Gregory A. Smith, Special Judge<br><br>Trial Court Cause No.<br>42D01-1101-DR-1 |

**Mathias, Judge.**

[1] The Knox Superior Court denied a motion to modify custody filed by Jennifer Sanders ("Mother"). Mother appeals and presents two issues for our review,

which we restate as (1) whether the trial court denied Mother due process when it denied her motion without a full evidentiary hearing, and (2) whether the trial court erred when it concluded that Mother had not established a substantial change in circumstances that would justify modification of custody.

We affirm.

## Facts and Procedural History

Mother met Bryan Sanders ("Father") in college, and the couple married in December 2004. They moved to Sandborn, Indiana, where Father, who had a degree in religious studies, was employed as minister at the Sandborn First Christian Church. Mother, too, had a degree in religious studies and served as the youth minister for the church. In May 2008, the parties had a daughter, K.S. ("Daughter").

In November 2010, the couple separated, and Mother moved in with her parents in Burton, Michigan, her home town. Daughter remained in Sandborn with Father. On January 5, 2011, Mother filed a petition to dissolve the parties' marriage, and Father filed a counter-petition on January 11, 2011, also seeking dissolution. On February 18, 2011, the parties filed with the trial court a provisional custody and parenting-time agreement, which the trial court accepted. The parties then reached a final settlement agreement, which the trial court approved. The trial court then entered a dissolution decree on March 7, 2011, which incorporated the terms of the final settlement agreement.

Regarding child custody, the settlement agreement provided:

> The parties shall share joint legal custody of the parties' minor child. The parents agree that the child's primary physical residence shall be with the Father subject to Mother's parenting time. The parties have agreed to share parenting time equally. (See attached Parenting Time Calendar). In the event of a disagreement they will use the Indiana Parenting Time Guidelines where distance is a factor. The parties agree to allow for flexibility and addition or changes of dates as along as each party is in agreement.

Appellant's App. p. 33. Attached to the settlement agreement was a parenting time calendar for the year 2011, with parenting time shared equally. Daughter was not yet three years old at the time, and she had not yet begun to attend school.

On May 30, 2012, Mother filed a motion to modify custody. Mother alleged that there had been a substantial and continuing change in the relationship of Father and Daughter and in the custodial and living arrangements of both Mother and Father; she also alleged that the existing custody order was no longer in Daughter's best interests. The trial court appointed attorney Shawna Webster as Daughter's guardian *ad litem* ("GAL"). The GAL filed a report on July 15, 2013, recommending that Father remain Daughter's primary physical custodian. The trial court held a hearing on Mother's petition on November 21, 2013, but instead of presenting any evidence, the parties informed the trial court that they had reached an agreement. This agreement provided that Daughter would spend the school year with Father and that Daughter would spend spring break, summer vacation, and Thanksgiving break with Mother; both parties

would split Christmas break evenly. The trial court accepted the agreement and entered an order incorporating the agreement on December 2, 2013.[1]

[7] Less than one year later, on August 4, 2014, Mother filed another petition to modify custody, seeking primary physical custody of Daughter.[2] The GAL was unable to attend the scheduled June 23, 2015 hearing on Mother's petition and sought to be excused from the hearing or, in the alternative, that the hearing be continued. The trial court issued an order excusing the GAL from attending the hearing, but Father requested that the trial court reconsider its ruling and instead continue the hearing so that the GAL could be present to testify and be cross-examined. Mother did not file a response to this motion, and the trial court granted it and set the hearing for November 18, 2015.

[8] On November 4, 2015, the GAL filed a report with regard to Mother's second motion to modify custody. This time, the GAL recommended that Daughter stay with Mother during the school year because the school system where Mother lived in Michigan offered a more balanced schedule. Under the existing custody agreement, Daughter was with Father 281 days per year, and with Mother for 84 days. Under the GAL's proposed custody arrangement,

---

[1] The agreement itself provided that the effective date of the agreement was November 21, 2013.

[2] On August 8, 2014, Mother filed a motion for change of judge. The trial court granted the motion for change of judge, and Judge Gregory Smith of the Daviess Circuit Court was appointed as special judge on August 15, 2014.

Daughter would be with Mother for 229 days per year and with Father for 136 days.

[9] On November 13, 2015, Father filed a motion for the trial court to conduct an in-camera interview with Daughter, which the trial court granted three days later. The hearing on Mother's motion to modify custody was then continued to March 11, 2016.

[10] At the hearing on the motion to modify custody, both parties appeared with counsel. The court met with both counsel in chambers before the hearing began, and Father withdrew his motion for an in-camera interview of Daughter. When the hearing began, the trial court indicated that it desired to meet the GAL in person to discuss the GAL's second report. The trial court also indicated that it did not need to hear any testimony to make a conclusion but told the parties that they could submit documentary evidence if they so desired. Mother's counsel made no objection to the trial court's procedure and indicated that she had no additional documentary evidence to present. Father's counsel also made no objection but did submit one exhibit, a school-year parenting-time comparison he had prepared, and this exhibit was admitted without objection. The trial court also requested that the parties submit proposed orders.

[11] On April 8, 2016, the GAL submitted a supplemental report in which she responded to the schedule proposed in Father's submitted exhibit. The GAL repeated her recommendation that Daughter attend school with Mother in Michigan, noting that the balanced schedule permitted Daughter to be with

both parents each month, whereas attending school where Father lived in Indiana would require Daughter to be away from Mother for four months.

[12] On May 12, 2016, the trial court issued its order, which provides in relevant part as follows:

> The Court notes that the guardian ad litem, Shawna Webster, has thoughtfully investigated this family and their current factual situations and has filed her reports with extensive and detailed analysis of each of the parties, their feelings and attitudes, the child in question, and the school calendars of the school systems that may be involved with this child, as well as the effect on overnights for each parent.
>
> The Court further notes at the outset that this case is unique amongst many in that the parents are not bitter or manipulative, have communicated extraordinarily well, and both truly want the best for their daughter. By all accounts, neither party has criticized the other or made any attempt to denigrate the other's parenting abilities. However, over the course of the past two years and after having gone to court previously concerning custody modifications, it appears that the communication between the parents has lapsed to a lower level and each parent is experiencing the paranoia that comes from failing to communicate and discuss matters, and results in parents imputing less than honorable intentions to the other parent.
>
> This cause allowed counsel to stipulate to the admission of exhibits outlining custody and parenting time proposals and the guardian ad litem's reports, all without contentious cross-examination by counsel. Counsel vigorously argued in their client's positions in chambers and summarized the same in open court.

The Court having taken this matter under advisement and reviewed the proposed entries, the report and supplement thereto filed by the guardian ad litem, and the printouts illustrating the parenting time for each parent under the competing parenting plans as affected by the school calendars of the North Knox Indiana School (where [Daughter] now attends), and the year-round school calendar used in Davison, Michigan, where the mother now resides.

## FACTUAL BACKGROUND:

* * *

20.     At the time of the November 4, 2015 [GAL] report [Daughter] was in second grade in the North Knox school systems and "has excelled in school." The guardian ad litem reported that her ". . . impressions of Kendall have not changed. She is a bright, energetic, well-adjusted little girl."

21.     In the interim since the last modification and agreed entry, the mother continued to live in Michigan. [Mother] had recently accepted a new position with General Motors at the Flint Michigan assembly plant. It was closer to her home and she was able to go from nights to the first shift working from 7:00 a.m. to 3:00 p.m.

22.     The guardian ad litem also reported that since her last report [Father] had remarried. His new spouse, Julie Sanders, has custody of her two (2) daughters, [A.S.], age 16 and [Al.S.], age 15. Both Julie and her daughters moved into the home where [Father] and [Daughter] reside in Sandborn, Indiana.

**COURT'S FINDINGS AND ORDER:**

23.     The Court notes that in the guardian ad litem's first report in July, 2013, she had recommended against modification following sound legal reasoning and precedent, including factors such as: mother's work schedule (which was nights at that time) as opposed to father's very flexible hours as the pastor of his church. A change at that time would have resulted in [Daughter] being cared for by her "Nana" [maternal grandmother]. And while [Daughter] had a great relationship with her Nana, the guardian ad litem noted that this did not make sense when the father was perfectly capable and available to care for [Daughter]. Secondly, the guardian ad litem recognized that the burden of proof was on the mother to show that a substantial and continuing change in one or more of the statutory factors affecting custody had occurred. She noted that the mother could not point to any change in the statutory factors being present other than "[Daughter] will be attending kindergarten." The guardian ad litem acknowledged that she believed in [her] first report that "both parties should have contemplated this at the time they entered into the [custody] Agreement." Therefore, the guardian ad litem was forced to conclude that there had not been a change of circumstances sufficient to warrant a modification of custody. The third concern the guardian ad litem noted was over mother's health conditions and concerns that she could not care for her child if she were suffering from the headaches and depression [that] she had experienced prior to and following the dissolution of marriage.

24.     In the guardian ad litem's most recent reports of November 4, 2015, and the Supplemental Report filed April 8, 2016, the guardian ad litem advocates for possible modification of the current order and recommends that the parties share joint legal and physical custody of [Daughter], with [Daughter] living with her mother during the school year to allow her to take

advantage of the balanced calendar used by the Michigan school system.

25.     Under the guardian ad litem's proposal, the parenting time arrangements of the current order would change from the mother having eighty-one (81) overnights (plus three overnights if she travels to Knox County), as opposed the father's current two hundred eighty-one (281) overnights. Under the proposed modification, mother would then have two hundred twenty-nine (229) overnights to the father's one hundred thirty-six (136). The guardian ad litem believed this was in keeping with the parties' prior attempts to maximize and equalize the parenting time between the two parents.

26.     The guardian ad litem's November 2015 report shows that the mother's position is that she feels she is being cut out of her daughter's life or replaced in [Daughter]'s life, and the father feels harassed by the mother's additional requests for parenting time, and he pulled back from doing the extra effort that he used to do for mother prior to his remarriage [and] [Daughter] beginning elementary school.

27.     The guardian ad litem aptly summed up the parents' decline in their communication as "both parents react out of fear of losing their daughter. That time and changes in circumstances have weakened mother and father's ability to communicate with one another."

28.     The Court finds that the only real change has been that the Michigan school system has a balanced calendar. There is no evidence or even contention that the Michigan school is better than the North Knox school system. The only contention is that it would allow mother to have more overnights and father to be in the position of having a significant reduction in his overnights. A role reversal without the required showing.

29.     The Court finds that the mother has not carried her burden of proof to show that there is a change in one or more of the statutory factors and that it is in the best interest of [Daughter] to modify the current custody and parenting time order.

30.     While no evidence has been submitted about any change in the mother's health or depression, there was some evidence that she was no longer working nights. However, the Court notes father's submission he indicates that she is now back to working nights, which would raise the same concerns as in July, 2013. However, having no direct evidence or testimony concerning those issues, the Court does not consider the same and gives the same absolutely no weight.

31.     While school related issues involving a child can factor into a custody modification (see In Re Paternity of C.S., 964 N.E.2d 879 (Ind. Ct. App. 2012), (where the court considered the child's aptitude, maturity and readiness for kindergarten as a substantial change in circumstances warranting a modification) there is no evidence here that [Daughter] has done anything but excel at school and that she is well-adjusted, has lots of friends and has only attended the North Knox school system. In short, there is no evidence to show that changing custody and schools is in [Daughter]'s best interest simply because of the difference in the school calendars. (See also: In Re the Paternity of E.R.B., 44 N.E.3d 840 (Ind. Ct. App. 201[5])).3

32.     Pursuant to Ind. Code 31-17-2-8, the factors relevant to custody determinations to be considered by a Court are: (1) The age and sex of the child; while [Daughter] has gotten a couple of years older she is still a young girl in elementary school. The

---

3 We note that our decision in *E.R.B.* was an unpublished memorandum decision. Pursuant to Appellate Rule 65(D), "a memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case."

Court finds no significant change in this factor. (2) The wishes of the child's parent or parents; it is clear that both parents would love to have [Daughter] reside with them all of the time if possible, so the Court finds no significant change in this factor. (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least 14 years of age; the Court finds no direct comments from [Daughter] but notes that the guardian ad litem reports that [Daughter] loves all of her family and her extended family and is an exceedingly well-adjusted little girl. The Court finds no significant change in this factor. (4) The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest; the Court finds that the guardian ad litem reported that [Daughter] is extremely fond of her parents, that she has a great relationship with both of her parents, and that she has a great relationship with her stepmother as well as her step sisters, and also enjoys being around her grandparents and her extended family. The Court, therefore, finds there has not been a significant change in this factor. (5) The child's adjustment to the child's home. school, and community; again the Court finds that the guardian ad litem's report and the supplement thereto as well for prior report incorporated by reference in her November, 2015 report all seem to indicate that [Daughter] is very well-adjusted in her home at Sandborn and in her school, and is doing great both educationally and socially, and, therefore, finds there has been no significant change in this factor. (6) The mental and physical health of all individuals involved; other than the guardian ad litem's concern from her prior reports over the mother's health and mental health issues, no new evidence has been submitted about the mother to show either an improvement or decline in her health status. There was no evidence concerning any health or mental health concerns involving the father or stepmother or any of the stepchildren residing in father's home. Therefore, the Court finds that there has been no significant change in this factor. (7) Evidence of a pattern of domestic or family violence by either parent; the Court notes that there has not been any

evidence or even suggestion or inference that there ever was any pattern of domestic or family violence between these two fine parents. (8) Evidence that the child has been cared for by a de facto custodian; The Court finds there has been no evidence to suggest that a de facto custodian is involved.

33.     The Court, therefore, finds that while both school systems may be equally good schools, the calendar used does not arise to a substantial and continuing change in one or more [of] the statutory factors rendering the Court's current custody order unreasonable such that it would no longer be in [Daughter]'s best interest.  The fact that [Daughter] aged a year or 2 since the last order and has started school, and is in fact completing the 2nd grade as of the date of this order, was or should have been within the part[ies]' contemplation at the time of the divorce and at the time of the last modification and agreed entry in this cause.

34.     The real change has been in the parties' deterioration of their previously exceptional communications concerning parenting time that they had exhibited in the past years, especially prior to [Daughter] beginning elementary school. That level of communication is in [Daughter]'s best interest and it is why she is currently doing so well and is so well-adjusted in school and is so comfortable with all of her family. Both parents exerting more effort to attempt to regain that prior level of communication would serve to alleviate a great many of the other concerns. Mother would "feel" less cut out and father would "feel" less like he is being pressured. Father should be aware that his remarriage is not a reason to cut back on his parental communications about [Daughter] and about parenting time with the mother. Mother should also keep in mind that time and distance and just life in general have changed not only in father's residence but in her residence, and that it was her choice to move back to Michigan.

35.     This Court finds that by all accounts from counsel and from the guardian ad litem and the very highly unusual praise that [Daughter] has received from all involved that these parents have done an exceptional job and are very capable of continuing to work out parenting time plans that will allow Kendall to have as much access and contact with both parents as possible. The Indiana Parenting Time Guidelines refer to parenting as "coparenting." Thus it is the parents' jobs to work together as "co-parents" in raising the child that they both brought into this world. This demands that each continue to treat the other with respect and consideration. By all accounts if any two parents can achieve this level of parenting and communication in the best interests of their child, [Mother] and [Father] can do so.

36.     This Court recognizes that if the parents were interested in trying to achieve a more equal parenting time arrangement given the distance involved as is suggested by the guardian ad litem, the Court would urge the parents to consider agreeing to modify the current custody parenting time arrangement along the lines as was suggested by Attorney Webster in her Supplemental Report of Guardian Ad Litem filed April 8, 2016, as contained in the last paragraph on page 2 thereof. She points out that under the proposal with mother having custody, the mother would giving up all "free time" with [Daughter] to maximize the father's time, but recognizes that in the current Order, the converse is not true. She suggested that additional time could be provided to the mother by giving her every fall break, Presidents' Day weekend. Easter Break, and a week or so of the father's time from the summer. She points out that some arrangement would have to be made so that each parent can plan vacations during the summer months which may be easier to do under the North Knox school system calendar.

37.     With little or no demonstrated change in any of the statutory factors or other circumstances rendering the current custody and parenting time order unreasonable and no longer in

[Daughter]'s best interests, this Court declines to modify the custody arrangement as agreed previously between the parties.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the mother's Petition for Modification of Custody is denied.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the parties shall continue to share joint legal custody of [Daughter], and that [Father] shall continue to be [Daughter]'s primary and physical custodian. The Court further ORDERS that the parties confer and arrange a parenting time/visitation schedule which shall maximize [Mother]'s access to [Daughter].

Appellant's App. pp. 12-23 (italics in original). From this order, Mother now appeals.

## Applicable Statutory Rule and Standard of Review

[13]   Modification of child custody may occur only when a parent can demonstrate both that (1) "modification is in the best interests of the child," and (2) "there is a substantial change in one or more of the factors the court may consider" in its initial custody determination. Ind. Code § 31-14-13-6. These factors include: (1) the age and sex of the child; (2) the wishes of the child's parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen years of age; (4) the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (5) the child's adjustment to home, school, and community; (6) the mental and physical health of all individuals involved; (7)

evidence of a pattern of domestic or family violence by either parent; (8) evidence that the child has been cared for by a de facto custodian. Ind. Code § 31-14-13-2.

[14]   In this case, Mother filed the motion to modify custody, and she therefore had the burden to demonstrate the requisite change in circumstances. *See Heagy v. Kean*, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007), *trans. denied*. By appealing the denial of her motion to modify custody, Mother appeals from a negative judgment. *See Nunn v. Nunn*, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). We will reverse a negative judgment only if it is contrary to law, meaning that the evidence points unerringly to a conclusion different from that reached by the trial court. *Id*. It is not enough that the evidence might support some other conclusion; it must instead positively require the conclusion contended for by the appellant before there is a basis for reversal. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). "[I]t is particularly difficult for a reviewing court to second-guess a situation that centers on the personalities of two parents battling for control of a child." *Id*. at 308.

[15]   Indiana appellate courts have a preference for granting latitude and deference to our trial courts in family law matters. *Wolljung v. Sided*, 891 N.E.2d 1109, 1111 (Ind. Ct. App. 2008) (citing *Kirk*, 770 N.E.2d at 307). On appeal, we will not reweigh the evidence or judge the credibility of the witnesses. *Id*. Instead, we view only the evidence favorable to the trial court's judgment and the reasonable inference that may be drawn from this evidence. *Id*. Judgments in custody matters generally turn on essential factual determinations and will be

set aside only when they are clearly erroneous. *Id*. at 1112. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id*.

[16] Furthermore, it appears that the trial court here voluntarily entered special findings. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666. It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id*. We may affirm a general judgment with *sua sponte* findings upon any legal theory supported by the evidence introduced at trial. *Id*. Although *sua sponte* findings control as to the issues upon which the court has found, they do not otherwise affect our standard of review of general judgment, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the trial court. *Id*.

### I. Mother Waived Her Right to a Full Evidentiary Hearing

[17] Mother first claims that the trial court denied her due process when it failed to hold a full evidentiary hearing on her motion to modify custody.

[18] Procedural due process must be provided to protect the substantive rights of the parties in child custody proceedings, and an opportunity to be heard is essential

before a parent can be deprived of custody. *Jendreas v. Jendreas*, 664 N.E.2d 367, 370 (Ind. Ct. App. 1996) (citing *Van Etta v. Van Etta*, 583 N.E.2d 767, 768 (Ind. Ct. App. 1991)). The relevant statutes contemplate an evidentiary hearing to determine whether there was a substantial change in at least one of the factors relevant to the children's best interests and whether modification would be in the children's best interests. *In re Paternity of R.A.F.*, 766 N.E.2d 718, 726 (Ind. Ct. App. 2002) (citing *Alexander v. Cole*, 697 N.E.2d 80, 83 (Ind. Ct. App. 1998); Ind. Code § 31-17-2-8; Ind. Code § 31-17-2-21).

[19] Here, the trial court held a meeting in chambers with counsel for both Mother and Father. At the start of the hearing, the trial court made it clear to both parties that it did not need to hold a full evidentiary hearing as most of the basic facts were undisputed. The trial court indicated its desire to meet with the GAL but stated that it did not feel it necessary to hear any testimony. The trial court also told both parties that they could submit any documentary evidence they wished the court to consider. Mother made no objection to this summary procedure and indicated that she did not have any documentary evidence to submit to the court.

[20] We find this case to be similar to *Bogner v. Bogner*, 29 N.E.3d 733, 739 (Ind. 2015), where the trial court held a summary hearing on the father's motion to modify his support obligation. Father did not object to this and made no objection to Mother's exhibits. *Id.* On appeal, our supreme court noted:

> Summary proceedings function to efficiently resolve disputes by allowing parties and the court to forego the use of formal rules of

procedure and evidence and instead allow the court to base its findings and conclusions upon the arguments of counsel and limited evidence. Summary proceedings commonly take place when parties are not disputing essential facts, but rather the legal outcome compelled by those facts.

*Id*. Because neither party objected to the summary nature of the proceedings, the court held that the father had waived any objection to the summary nature of the proceeding: "if [f]ather did not want to proceed summarily and believed that a full evidentiary hearing was necessary, *that objection should have been raised at the time of the hearing*. Only at that point would it be appropriate for [f]ather to assert that there was other evidence relevant to the modification determination." *Id*. at 741 (emphasis supplied); *see also Reynolds v. Reynolds*, 64 N.E.3d 829, 834 (Ind. 2016) (holding that the father failed to preserve any error regarding the summary nature of contempt proceeding by failing to object to the form of the proceeding).

[21] Here, Mother was represented by counsel, and when the trial court indicated its desire to proceed without a full hearing, Mother made no objection. Under these facts and circumstances, Mother has waived any issue regarding the nature of the proceedings. *See Bogner,* 29 N.E.3d at 741.

[22] Mother claims that the present case is more similar to *Wilson v. Myers*, 997 N.E.2d 338 (Ind. 2013). In *Wilson*, the father was initially awarded primary physical custody of the parties' children. The mother then filed a petition to modify custody, seeking primary physical custody of the children. *Id*. At the beginning of the hearing on the mother's motion, the trial judge announced her

intent to rule on the motion. *Id.* at 339. The father then requested an evidentiary hearing on custody. *Id.* The hearing then shifted to the topic of father having recorded the audio of the family counseling sessions, during which, as characterized by our supreme court, "[n]o courtroom formalities (and few civilities) seem to have been observed at all. Parties, attorneys, counselors, and the judge talked freely, interrupted, and questioned each other without any semblance of order or procedure." *Id.* at 341. The trial court then abruptly concluded the hearing, saying, "I feel like we've wasted a year. And it shouldn't go on any longer. I don't want to have another in-camera. And I don't understand why we would need an evidentiary hearing. Because I want to grant the Amended Motion to Modify Custody to give both the children to [the mother]." *Id.* at 339. The court then requested the mother prepare and file an order consistent with its announced decision, and no witnesses were heard or other evidence presented. *Id.*

[23] Our supreme court reversed the trial court, noting that the trial court's order contained no mention of whether the modification of custody was in the best interests of the children, nor was there any mention of a substantial change in any of the factors a trial court is required to consider in modifying custody. *Id.* at 341. Although the trial court referenced "the whole picture" in making its decision, it provided no insight into what was contained in that picture before simply announcing that it planned to grant the mother's motion to modify custody. *Id.* The trial court did contact the family counselors directly, but nothing during those conversations was reflected in the record, and nothing in

the transcript of the hearing related to any of the factors enumerated in Indiana Code section 31-17-2-8. Thus, the court could not assume these factors were considered. *Id.*

[24] The mother argued that the father had waived his argument with regard to the trial court's process by signing a release authorizing the trial court to contact the counselors, not insisting that the witnesses be sworn, and not filing a motion requesting specific findings of fact and conclusions of law. *Id.* The court rejected this argument, noting that the children were not represented at the hearing. *Id.* Accordingly, the court reversed the trial court's order after concluding, "[W]hat we are now faced with on appeal is an order directing one parent to hand over two children to another parent with no mention or hint that doing so is in accordance with the Indiana Code." *Id.*

[25] We consider the present case to be much more similar to *Bogner* than *Wilson*. Unlike the father in *Wilson*, Mother did not request an evidentiary hearing on the issue of custody. Instead, like the father in *Bogner*, Mother did not object to the trial court's summary proceeding and did not object to Father's exhibits or present any evidence herself. In fact, Mother indicated to the trial court that she had no other evidence to present. *See* Tr. p. 5 ("The [proposed parenting-time] calendars are what they are, they'll be what they'll be and as you meet with the Guardian Ad Litem, I think that's the issue and you'll take that under advisement. So, I have nothing else to submit that way.").

To paraphrase the *Bogner* court, if Mother did not want to proceed summarily and believed that a full evidentiary hearing was necessary, that objection should have been raised at the time of the hearing, as only at that point would it be appropriate for Mother to assert that there was other evidence relevant to the modification determination. *See Bogner*, 29 N.E.3d at 741. Having failed to object to the trial court's procedure, Mother cannot now present the issue for the first time on appeal. *See id*. Moreover, here, unlike in *Wilson*, it is clear that the trial court considered the relevant statutory factors and did not announce its decision from the bench. Indeed, the trial court entered detailed findings supporting its conclusion and considered each and every one of the required statutory factors. Moreover, Daughter's interests were represented by the GAL in her various reports to the trial court.

In short, we conclude that Mother waived any claim regarding the summary nature of the trial court's proceeding by failing to make a contemporaneous objection. Perhaps Mother believed that a full evidentiary hearing would be unnecessary, as the GAL's report recommended modifying custody in Mother's favor, but regardless of the reasons, Mother cannot now complain about a proceeding that she had no objection to at the time.[4]

---

[4] Mother also summarily claims that "[t]o the extent that Father argues this substantive right is waived, Mother would assert that this would constitute fundamental error." Appellant's Br. at 10. However, Mother does not further develop this argument, and we therefore consider it waived. *See York v. Frederic*, 947 N.E.2d 969, 979 (Ind. Ct. App. 2011) (noting that a party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record) (citing Ind. Appellate Rule 46(A)(8)(a)), *trans. denied*.

Mother argues that she should have been afforded the opportunity to cross-examine the GAL regarding her supplemental report, which was filed after the hearing. She also claims that she could not have waived any objection to the trial court's consideration of the GAL's supplementary report because it was submitted after the hearing. However, the trial court indicated at the hearing that it desired to meet with the GAL, to which Mother had no objection. As noted by Father, the GAL's supplemental report was filed before the deadline for the parties to submit their proposed entries. Thus, if Mother desired to cross-examine the GAL regarding the supplemental report or had any objection to the trial court considering this report, she could have made the trial court aware of her objection and desire to cross-examine the GAL. Instead, Mother allowed the trial court to consider the supplemental report without objection. This is not surprising; in her supplemental report, the GAL repeated her prior recommendation that Daughter attend school with Mother in Michigan, noting that the balanced schedule permitted Daughter to be with both parents each month, whereas attending school where Father lived in Indiana would require Daughter to be away from Mother for four months. Thus, the trial court's consideration of the GAL's supplemental report could only have helped Mother's position, not hurt it, and we fail to see how any cross-examination would have assisted Mother's argument. Any error was therefore harmless.

## II. Sufficiency of the Evidence

Mother also claims that the trial court's order was not supported by sufficient evidence. Specifically, Mother argues that the trial court's order was not

supported by any evidence because the trial court did not hold a full evidentiary hearing. However, it was Mother's burden as the moving party to establish that there had been a substantial change in the circumstances and that modification was in the best interests of the child. *See Heagy*, 864 N.E.2d at 388. Yet Mother made no objection to the trial court's summary procedure and presented no documentary evidence, nor did she request to present any testimonial evidence. Instead, it seems that Mother was content to rely on the GAL's report, which was favorable to her. This strategy having failed, Mother cannot now change her mind and request a full evidentiary hearing. If that is what she desired, she should have made this clear to the trial court or objected to the trial court's summary procedure.

[30] To the extent that Mother argues that the trial court could not have sufficiently considered Daughter's best interests without a full evidentiary hearing, we note that the trial court's duty to consider the best interests of the child is independent of holding an evidentiary hearing. Indeed, custody disputes are often resolved by settlement agreements. Regardless of whether there is any hearing on the settlement agreement, the trial court is still obligated to consider the agreement of the parties and determine whether the proposed settlement agreement is in the best interest of the child or children. *See Reno v. Haler*, 734 N.E.2d 1095, 1100 (Ind. Ct. App. 2000), *aff'd on reh'g*, 743 N.E.2d 1139 (2001) (noting that it is the duty of the trial court to determine if the settlement agreed to by the parents is in the best interest of the child and that no agreement between parties affecting custody automatically binds the trial court); *see also*

*Stone*, 991 N.E.2d at 1001 (noting that when a trial court reviews a custody agreement, the "overriding policy concern" is the best interests of the child or children) (citing *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n.10 (Ind. 1996)).

[31] Here, the trial court had before it more than just a settlement agreement. As detailed in the trial court's order denying Mother's motion to modify custody, the trial court considered the entire history of this case, including the parties' prior settlement agreements and the reports of the GAL, which dated back several years. Unlike in *Wilson*, where there was no indication that the trial court had considered the statutory factors, here the trial court's order listed each statutory factor and explained its reasoning as to why the court did or did not believe there had been a substantial change in that factor.

[32] Mother further claims that the trial court erred in determining that there was no change in the relevant statutory factors. We disagree. The trial court entered detailed findings on each factor, which we address *seriatim*.

[33] The first factor is "the age and sex of the child." I.C. § 31-14-13-2(1). Here, the trial court noted that although Daughter had grown slightly since the last settlement agreement, she was still a young girl in elementary school. Thus, the trial court concluded that there had been no substantial change in this factor. Given the undisputed age of Daughter, we cannot say that the trial court clearly erred in this conclusion.

[34] The next statutory factor is "the wishes of the child's parents." *Id*. at § 2(2). The trial court noted that both parents desired Daughter to reside with them full

time, if possible. Thus, the trial court concluded that there had been no significant change in this factor, a conclusion we cannot say is clearly erroneous.

[35] The third factor for the trial court to consider is "the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age." *Id*. at § 2(3). Relying on the GAL's report, the trial court determined that Daughter loves both of her parents and her extended family, and accordingly found no substantial change in this factor. Again, this is not a clearly erroneous conclusion.

[36] The fourth factor is "the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest." *Id*. at § 2(4). With regard to this factor, trial court found that, based on the GAL's report, Daughter had a good relationship with both of her parents, her grandparents, and extended family. The trial court also recognized that Father had remarried and noted that Daughter had a good relationship with her new stepmother and stepsisters. Mother claims that Father's remarriage is a substantial change in the circumstances regarding Daughter's interaction and interrelationship with her parents and siblings, but the trial court was well within prerogative to conclude that, despite the remarriage, Daughter's interaction and relationship with her parents had not *substantially* changed since the previous custody agreement.

[37] The fifth factor the trial court that the trial court was required to consider was Daughter's "adjustment to home, school, and community." *Id*. § 2(5). The trial court found, based on the GAL's report, that Daughter was doing well at home and at school in Indiana and was thriving both educationally and socially. Mother presented no evidence to the contrary and does not argue that the trial court clearly erred in this regard.

[38] The next factor the trial court considered was "the mental and physical health of all individuals involved." *Id*. § 2(6). The trial court noted that no new evidence was submitted concerning any change in Mother's physical or mental health status, nor did the GAL note any concerns regarding the health of Father, his new wife, or his stepdaughters. Thus, the trial court did not clearly err in determining that there was no substantial change in this factor.

[39] The penultimate factor for the trial court to consider was "evidence of a pattern of domestic or family violence by either parent." *Id*. at § 2(7). The trial court noted that there was not even a suggestion of any violence by either party, whom the trial court referred to as "fine parents." Tr. p. 21. Similarly, there was no evidence that Daughter had ever been cared for by a de facto custodian, which is the final statutory factor for the trial court to consider. *Id*. at § 2(8).

[40] The trial court ultimately determined that the school system in Michigan where Mother lived and in Indiana where Father lived were both good options. However, the trial court concluded that the more balanced calendar at the Michigan school did not rise to the level of a substantial and continuing change

in any of the above-listed factors. Indeed, the trial court noted that "the fact that [Daughter] aged a year or [two] since the last [custody] order and has started school, and in fact is completing the 2nd grade as of the date of this order, was or should have been within the [parents'] contemplation at the time of the divorce and at the time of the last modification and agreed entry in this cause." Appellant's App. p. 21. We are unable to say that the trial court's reasoning in this regard is clearly erroneous. The parties were well aware that Daughter would soon be attending school and came to a custody agreement that gave Father primary physical custody.

[41] As noted by the trial court, the only real change in circumstances was Father's remarriage and the subsequent deterioration in the parties' previously exceptional communications. Indeed, the trial court chastised the parties for the breakdown in their co-operation and communication and encouraged them to restore their once laudable behavior. However, the fact that Father remarried and that the parties no longer communicated at the level they once did does not mean that the trial court clearly erred in denying Mother's motion to modify custody.

[42] In short, it was Mother's burden to prove that there had been a substantial and continuing change in any of the above-enumerated factors and that a change in custody was in Daughter's best interests. Certainly, the GAL's reports would have supported such a decision by the trial court. However, it is not enough that the evidence might have supported another decision; it must instead positively

require the result sought by the appellant. *D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012). That is simply not the case here.

## Conclusion

Mother waived her right to a full evidentiary hearing when she failed to object to the trial court's summary procedure and failed to submit any other evidence or request to submit testimonial evidence. The trial court's decision was based on sufficient evidence, and the trial court did not err in denying Mother's request to modify custody.

Affirmed.

Baker, J., and Pyle, J., concur.